UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

**RUSSELL J. DEFRANCO**,

               Plaintiff,

vs.                                         **Civil Case No. 20-cv-01861(JLS)**

**NEW YORK POWER AUTHORITY**,

               Defendant.

_____

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE PROPOSED AMENDED COMPLAINT**

Respectfully submitted,

**THE TARANTINO LAW FIRM, LLP**
Nicholas P. DeMarco, Esq.
Kevin P. Wicka, Esq.
*Attorneys for the Plaintiff*
610 Main Street, Suite 310
Buffalo, New York 14202
(716) 849-6500

## TABLE OF CONTENTS

PRELIMINARY STATEMENT …………………………………..                           1

RELEVANT BACKGROUND …………………………………...                           2

APPLICABLE LEGAL STANDARD ……………………………                           4

ARGUMENT …………………………………………………..                           5

I.      The Plaintiff's Amended Complaint States a Plausible Disability-
        Related Claim Under the ADA and NYSHRL ………………           5

        A.      The Plaintiff's Hearing Impairment Qualifies as a
                Disability under the ADA and NYSHRL ………………           6

        B.      The Plaintiff's Medical Episode Qualifies as a
                Disability under the ADA and NYSHRL …………………           9

        C.      The Amended Complaint Sufficiently Alleges that
                the Adverse Employment Action Taken Against
                Plaintiff was Because of His Age, Hearing                    11
                Impairment, and/or Perceived Disability …………………

II.     The Amended Complaint States a Plausible Age-Related Claim
        under the ADEA and NYSHRL …………………………………           15

III.    The Amended Complaint States Plausible Claims for
        Hostile Work Environment and Harassment Based on
        Plaintiff's Age, Hearing Impairment, and Perceived Disability …..           17

IV.     The Amended Complaint States Plausible Retaliation
        Claims Under the ADA, ADEA, and NYSHRL …………………..           19

V.      The Amended Complaint States a Plausible Retaliation Claim
        under NY Civil Service Law § 75-b ………………………………           22

VI.     The Amended Complaint States a Plausible Claim of                    23
        Retaliation under the FMLA ……………………………………..

VII.    Plaintiff's Claims for Discrimination and Retaliation under the
        ADA and ADEA are Not Time-Barred …………………………..           23

CONCLUSION…………………………………………………………           25

## **TABLE OF AUTHORITIES**

**_CASES_**                                                                                    **Page(s)**

_Alfano v. Costello_, 294 F.3d 365, 2002 U.S. App. LEXIS 12574
    (2nd Cir. 2002)……………………………………………………...        17

_Anderson v. Dep't of Children & Families of Conn._,
    322 Fed. Appx. 15 (2nd Cir. 2009)………………………………………        24

_Deravin v. Kerik_, 335 F.3d 195, 201 (2nd Cir. 2003)……………………………        24

_Foster v. Humane Soc'y of Rochester & Monroe County, Inc._,
    724 F. Supp. 2d 382, 2010 U.S. Dist. LEXIS 73384
    (W.D.N.Y. 2010)………..........................................................................        4, 5, 19

_Gorzynski v. JetBlue Airways Corp._, 596 F.3d 93,
    2010 U.S. App. LEXIS 3424 (2nd Cir. 2010)……………………………        21

_Green v. Town of E. Haven_, 952 F.3d 394,
    2020 U.S. App. LEXIS 7342 (2nd Cir. 2020)……………………………        16

_Hamilton v. Westchester Cty._, 3 F.4th 86, 93 (2d Cir. 2021) …………………….        10, 11

_Hayden v. Paterson_, 594 F.3d 150, 2010 U.S. App. LEXIS 1887
    (2nd Cir. 2010)………………………….....................................................        4

_Jones v. Yonkers Pub. Schs_, 326 F.Supp.2d 536 (S.D.N.Y. 2004)……………...        21

_Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C._,
    716 F.3d 10, 2013 WL 1776646 (2nd Cir. 2013)…………………………..        20

_Krause v. Lancer & Loader Group, LLC_, 40 Misc.3d 385
    (Kings Cty. Sup. Ct. 2013) ………………………………………………….        9

_Laface v. Eastern Suffolk BOCES_, 349 F.Supp.3d 126, 147
    (E.D.N.Y. 2018) ……………………………………………………………        10, 15

_Langella v. Mahopac Cent. Sch. Dist._, 2020 U.S. Dist. LEXIS 95588
    (S.D.N.Y. May 31, 2020)……………………………………………………        4, 8, 16,
        17

_Mathirampuzha v. Potter_, 548 F.3d 70, 75 (2nd Cir. 2008)……………………..        25

_Matusick v. Erie County Water Authority_, 757 F.3d 31 (2d Cir. 2014)…………        16

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)……………………..   20

*Morey v. Windson Radiology Grp., P.C.*, 2019 U.S. Dist.
    LEXIS 9289 (W.D.N.Y. 2019), *aff'd* 2019 U.S. App.
    LEXIS 36961 (2d Cir. 2019)……………………………………………   6, 7

*O'Connor v. N.Y. State Dept. of Fin. Servs.*, 2022 U.S. Dist.
    LEXIS 157933 (N.D.N.Y. 2022) ………………………………………   7, 8

*Pistello v. Bd. of Educ. of the Canastota Cent. Sch. Dist.*, 808 Fed. Appx. 19,
    2020 U.S. App. LEXIS 11310 (2nd Cir. 2020)…………………………..   21

*Rusk v. New York State Thruway Auth.*, 37 F. Supp. 3d 578,
    2014 U.S. Dist. LEXIS 109534 (W.D.N.Y. 2014)……………………...   22

*Sacks v. Gandhi Eng'g Inc.*, 2013 WL 8282955, at *12 (S.D.N.Y. 2013) ……..   7

*Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161,
    2006 U.S. App. LEXIS 9583 (2nd Cir. 2006)……………………………   15

*Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S. Ct. 992,
    152 L. Ed. 2d 1 (2002)………………………………………………   4

*Terry v. Ashcroft*, 335 F.3d 128, 2003 U.S. App. Lexis 14511
    (2nd Cir. 2003)……………………………………………………...   24, 25

*Treglia v. Town of Manlius*, 313 F.3d 713, 2002 U.S. App. LEXIS 26120
    (2nd Cir. 2002)……………………………………………………...   9

*Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67 (2d Cir. 2006) …………………   11

*Williams v. Priatno*, 829 F.3d 118, 123-124 (2d Cir. 2016) ……………………   10, 11

*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127,
    71 L. Ed. 2d 234 (1982)…………………………………………………   24

**_STATUTES & REGULATIONS_**

Fed. R. Civ. P. 12(b)(6)……………………………………………………   4, 5

Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*)……………   5

Americans with Disability Act of 1990 (42 U.S.C.S. § 12201 *et seq.*)…………   5, 6, 9, 10

Family Medical Leave Act (29 U.S.C.S. § 2615)………………………………   5, 23

New York State's Civil Service Law § 75-b…………………………………   5, 22

New York's Human Rights Law (New York Executive Law § 296, *et seq*.)…...     5, 16

28 C.F.R. § 35.108(d)(1)(ii) ……………………………………………………….     10

28 C.F.R. § 35.108(d)(1)(ix)……………………………………………………….     10

29 C.F.R. § 1630.2(j)(1)(iii) ………………………………………………………     7

## PRELIMINARY STATEMENT

Plaintiff, RUSSELL J. DEFRANCO ("Plaintiff" or "Mr. DeFranco"), submits this Memorandum of Law in response to Defendant, NEW YORK POWER AUTHORITY's ("Defendant" or "NYPA") Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Amend, which is more appropriately characterized as a "renewed" motion to dismiss the Amended Complaint. Admittedly, Plaintiff failed to provide a proposed Amended Complaint in connection with his opposition to Defendant's initial motion to dismiss the Complaint, because Plaintiff did not believe such amendment was necessary to survive a pre-answer motion to dismiss. Subsequently, this Court issued a Decision and Order on July 22, 2022 (Dkt. No. 20) ("July 22 Order"), which invited the Plaintiff to file a motion to amend his Complaint and denied the Defendant's motion to dismiss without prejudice.

Although the Plaintiff argued that amendment of the Complaint was not necessary to survive Defendant's initial motion to dismiss, in an abundance of caution, Plaintiff accepted the Court's offer and filed a motion for leave to amend the Complaint (Dkt. No. 21). Completely ignoring this Court's call to promote judicial efficiency in its July 22 Order, the Defendant has submitted this "renewed" motion to dismiss and has gone way beyond the confines of its initial papers and is raising new arguments (that it could have raised before) that are not specific to any aspect of the proposed amendments.

Ultimately, the Defendant's instant motion to dismiss fails for the same reason its original motion to dismiss fails – it misapplies the standard of review applicable to a FRCP 12(b)(6) motion to dismiss, and it reaches improper and erroneous conclusions by affording itself the benefit of every reasonable inference when it is not entitled to the same. As such, for the reasons set forth herein and previously espoused in Plaintiff's opposition to Defendant's motion to dismiss (Dkt. 13), the Defendant's renewed motion to dismiss the Amended Complaint should be denied in its entirety.

1

## RELEVANT BACKGROUND

The proposed Amended Complaint extensively details Plaintiff's history of employment as a Security Sergeant with Defendant NYPA at its Niagara County facility, which began on or about September 19, 2016 and ended on February 19, 2019, when he was terminated. (Dkt. No. 21-3, ¶ 17). During the course of his employment and prior to his termination, Plaintiff was subjected to a hostile work environment, discrimination, harassment, and retaliation in the terms and conditions of his employment because of his hearing disability, age, and for engaging in a protected activity. (Dkt. No. 21-3, ¶¶ 20-24).

The Plaintiff raised these concerns regarding his belief that his civil rights were being violated to many people and departments within Defendant NYPA, but the more he tried to have the issues addressed, the worse the treatment became. (Dkt. No. 21-3, ¶¶ 25-27, 29, 34, and 40). Eventually, on or about January 17, 2019, Plaintiff filed a formal internal complaint with Defendant NYPA's Civil Rights and Inclusion Office ("CRIO"), alleging that his civil rights were being violated on the basis of his hearing disability, age, and that he had been retaliated against by Security Manager Sinatra and HR Manager Smith. (Dkt. No. 21-3, ¶ 34).

The subsequent investigation conducted by Defendant NYPA's CRIO was protracted, and while it was ongoing from January 2019 until October 2019 the Plaintiff experienced additional acts of discrimination, harassment, and retaliation for having filed his complaint. (Dkt. No. 21-3, ¶¶ 36-38, 44, and 46).

Defendant NYPA's CRIO Director, Nancy Harvey ("Director Harvey"), did not issue her report until October 17, 2019, almost nine (9) months after Plaintiff filed the internal complaint. (Dkt. No. 21-3, ¶ 41). Despite the delay, Director Harvey's report indicated that Plaintiff's allegations of retaliation against Security Manager Sinatra ***were substantiated*** and recommended administrative action be taken. *Id.* On October 31, 2019, after receiving Director Harvey's report and having

experienced additional harassment, discrimination, and retaliation since filing the internal complaint in January 2019, Plaintiff filed a pro se complaint with the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC"), alleging retaliation in the form of a negative performance review and employment discrimination based on Plaintiff's age, hearing disability, marital status, and national origin.  (Dkt. No. 21-3, ¶ 43).

On or about January 10, 2020, while the investigations by the NYSDHR and EEOC were ongoing, Plaintiff experienced a medical episode while at work where he blacked out and was found in a semi-conscious state on the floor.  (Dkt. No. 21-3, ¶ 44).  Plaintiff requested leave under the FMLA for this medical issue, which Defendant NYPA initially approved despite Security Manager Sinatra accusing the Plaintiff of sleeping on the job.  (Dkt. No. 21-3, ¶¶ 44-46).  On February 19, 2020, after having returned to work from his medical leave, Defendant NYPA terminated the Plaintiff ostensibly for sleeping on the job and poor job performance.  (Dkt. No. 21-3, ¶ 46).  The reasons for Plaintiff's termination espoused by Defendant NYPA, however, were pretext for the final act of unlawful discrimination towards the Plaintiff, which was terminating his employment on February 19, 2020 for filing complaints about violations of his civil rights with the NYSDHR and EEOC, as well as for his requesting leave under the FMLA on January 10, 2020.

Notably, at the time of Plaintiff's termination, the investigations by the NYSDHR and EEOC were ongoing and incomplete.  When Plaintiff received his Notice of a Right to Sue from the EEOC on or about September 17, 2020, he had already been terminated from his employment for nearly seven (7) months.

## APPLICABLE LEGAL STANDARD

In reviewing a motion to dismiss for failure to state a claim for which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), courts must assess whether a complaint contains sufficient factual material to state a claim to relief that is plausible on its face.  *Hayden v. Paterson*, 594 F.3d 150, 2010

U.S. App. LEXIS 1887 (2nd Cir. 2010); *Foster v. Humane Soc'y of Rochester & Monroe County, Inc.*, 724 F. Supp. 2d 382, 2010 U.S. Dist. LEXIS 73384 (W.D.N.Y. 2010).  Although they are not bound to accept as true a legal conclusion couched as a factual allegation or to credit mere conclusory statements or threadbare recitals of a cause of action, reviewing courts must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor.  *Id.*; *see also Langella v. Mahopac Cent. Sch. Dist.*, 2020 U.S. Dist. LEXIS 95588 (S.D.N.Y. May 31, 2020).

In determining whether a complaint states a plausible claim for relief, a district court must consider the context and draw on its judicial experience and common sense.  *Langella*, 2020 U.S. Dist. LEXIS 95588 at *11-12.  A claim is facially plausible when the facts pleaded allow a court to make a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.*  It is significant to note that the Supreme Court in *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) held that there is no heightened pleading requirement for employment discrimination complaints.  *Foster*, 724 F. Supp. 2d at 389.

When evaluating a FRCP 12(b)(6) motion to dismiss, the court's function is not to evaluate the strength of the pleadings but rather to determine their legal sufficiency.  *Id.*  In this regard, courts should be cautious in preventing the moving party from unilaterally converting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) into a summary judgment, because the Plaintiff has not had the opportunity to discovery or present evidence in support of its claims.  *Id.*

## ARGUMENT

The Defendant's arguments suggesting that the Plaintiff's proposed Amended Complaint is deficient as a matter of law are without merit.  The Defendant fails to draw any distinction between the Plaintiff's initial Complaint and the proposed Amended Complaint, instead using the instant motion as a second premature and conflated attempt to have the merits of the Plaintiff's claims

addressed in the context of a motion to dismiss, prior to Plaintiff being allowed to discover or produce a single shred of evidence in support of his claims.

When analyzed under the appropriate legal standard, however, which affords the Plaintiff the benefit of an inference and not the Defendant, it is clear that the proposed Amended Complaint sets forth plausible claims for age and disability-based discrimination, harassment, and retaliation in violation of the Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.*) ("ADEA"); the Americans with Disability Act of 1990 (42 U.S.C.S. § 12201 *et seq.*) ("ADA"); the New York's Human Rights Law (New York Executive Law § 296, *et seq.*) ("NYSHRL"); and New York State's Civil Service Law § 75-b ("NYSCSL").  In addition, the Amended Complaint states a plausible claim of retaliation in violation of the Family Medical Leave Act (29 U.S.C. § 2615) ("FMLA").

## I.    THE PLAINTIFF'S AMENDED COMPLAINT STATES A PLAUSIBLE DISABILITY-RELATED CLAIM UNDER THE ADA AND NYSHRL

The Defendant erroneously suggests that the Plaintiff has failed to state a plausible disability-related claim under the ADA and NYSHRL, arguing that: (1) Mr. DeFranco's hearing impairment does not constitute a "disability" under the ADA or NYSHRL; (2) Mr. DeFranco's medical episode on January 10, 2020 does not qualify as a "disability" under the ADA or NYSHRL; and (3) the Amended Complaint does not allege causation relating any adverse action to Plaintiff's claimed disabilities.  Each of these arguments is puffery, however, and they can easily be debunked using the authorities relied on by the Defendant itself.  It is also significant to note that none of these arguments were raised by the Defendant in support of its motion to dismiss Mr. DeFranco's original complaint, so any deficiency argued by the Defendant in this motion was unable to be addressed in Mr. DeFranco's proposed Amended Complaint.

A.     **The Plaintiff's Hearing Impairment Qualifies as a Disability under the ADA and NYSHRL**

The Defendant turns the applicable standard for a pre-answer motion to dismiss, affords itself the benefit of every reasonable inference, and erroneously concludes that Mr. DeFranco's hearing impairment does not and cannot qualify as a "disability" under the ADA or NYSHRL.  This is incorrect.

The ADA defines a "disability" as: (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; **<u>or</u>** (C) being regarded as having such an impairment.  42 U.S.C. § 12102(1) (emphasis added).   In determining whether a plaintiff has a disability that is protected by the ADA, courts consider: (1) whether the plaintiff suffered from a physical or mental impairment; (2) whether the life activity upon which the plaintiff relied constitutes a major life activity; and (3) whether the plaintiff's impairment substantially limited the major life activity identified.  *Morey v. Windson Radiology Grp., P.C.*, 2019 U.S. Dist. LEXIS 9289, at *9-10 (W.D.N.Y. 2019), *aff'd* 2019 U.S. App. LEXIS 36961 (2d Cir. 2019).

The Defendant does not dispute that Mr. DeFranco has alleged that he suffers from hearing impairment.  With respect to the other aspects of an ADA analysis, the statute itself provides that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, **<u>hearing</u>**, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (emphasis added).  The ADA also directs courts to construe the term "disability" in favor of broad coverage of individuals, to the maximum extent permitted by the terms of the ADA.  *Morey v. Windsong Radiology Grp., P.C.*, 2019 U.S. Dist. LEXIS 9289, at *9-10.  In *Morey*, this court characterized a claimant's burden under the amended ADA as "relatively light," and explained that the ADA only requires a showing that the impairment substantially limits – but not necessarily prevents, or

6

significantly or severely restricts – the ability to perform at least one major life activity as compared to most people in the general population.  *Id.*; *see also* 29 C.F.R. § 1630.2(j)(1)(iii) (noting that "substantially limits" is not meant to be a demanding standard and as a threshold issue should not demand extensive analysis by the court).

In *Morey*, the district court correctly determined that the plaintiff's claimed disability in that case could not qualify as a disability under even the lenient ADA standard, because the disability being claimed was the plaintiff's height.  Unlike hearing, the definition of "impairment" under the ADA does not include physical characteristics such as eye color, hair color, left-handedness, or height, weight, or muscle tone that are within normal range and are not the result of a physiological disorder.  *Id.* at *11 (internal quotations omitted), *citing Sacks v. Gandhi Eng'g Inc.*, 2013 WL 8282955, at *12 (S.D.N.Y. 2013).

The Defendant's argument that NYPA is left entirely (prior to any discovery) to guess with respect to what, how, and (if so) to what extent Plaintiff's alleged hearing impairment impacts his daily life is befuddling.  (Dkt. No. 22, pg. 14, fn. 4).  The ADA itself identifies "hearing" as a major life activity, presumably because being unable to hear has a self-evident impact on one's daily life.  Moreover, the Defendant mistakenly relies on the case of *O'Connor v. N.Y. State Dept. of Fin. Servs.*, 2022 U.S. Dist. LEXIS 157933 (N.D.N.Y. 2022) to argue that Mr. DeFranco's hearing impairment does not qualify as a "disability" under the ADA.  In *O'Connor*, the plaintiff alleged generally that her hearing impairment caused her difficulty hearing in certain situations and could affect hearing and certain forms of communication.  2022 U.S. Dist. LEXIS 157933, at *8.  Because the complaint filed by the plaintiff in *O'Connor* did not contain any allegations regarding any specific instances where her hearing had an impact on her daily life, a district court for the Northern District of New York concluded that the plaintiff had failed to allege a qualifying disability for hearing impairment.

7

It should be noted that the court in *O'Connor* was evaluating a claim under the Rehabilitation Act of 1973 (29 U.S.C. § 701, *et seq.*), and it was not decided in the Western District of New York.

Unlike the plaintiff's complaint in *O'Connor*, both the Complaint and the proposed Amended Complaint in this case contain allegations that reflect specific instances where the self-evident impact such hearing loss impacted DeFranco in the context of his life and this case.  In particular, both the Complaint and the proposed Amended Complaint contain allegations that Security Manager Sinatra openly chastised and mocked DeFranco with respect to his hearing impairment; and that Security Manager Sinatra intentionally held meetings where DeFranco would be unable to hear. (Dkt. No. 1, ¶ 23; Dkt. No. 21-3, ¶ 23).  Moreover, in the proposed Amended Complaint, DeFranco alleges that Defendant continually harassed and subjected him to a hostile work environment because of his disability from the time he was hired on or about September 19, 2016 through the time he was terminated on February 19, 2020.  (Dkt. No. 21-3, ¶ 58).

With respect to Mr. DeFranco's state-law claims, it is well-established that claims for discrimination, retaliation, and hostile work environment under the NYSHRL are analyzed under the same legal framework as their federal counterparts.  *See e.g.*, *Langella*, 2020 U.S. Dist. LEXIS 95588 at *45.  However, New York and Second Circuit cases make clear that the New York disability statute defines disability ***more broadly than does the ADA***.  *Treglia v. Town of Manlius*, 313 F.3d 713, 2002 U.S. App. LEXIS 26120 (2nd Cir. 2002) (emphasis added).  As the Second Circuit explained in *Treglia*:

> The New York Court of Appeals has held that in New York, the term disability is more broadly defined than in typical disability statutes…More recently, we applied this broad reading of the New York statute, pointing out that unlike the federal statute, the state statute does not require plaintiffs to identify a major life activity that is substantially limited by their impairment.

*Treglia*, 313 F.3d at 723 (emphasis added).  Since the allegations in the Complaint sufficiently state a claim against Defendant NYPA under the federal ADA standard, they must also suffice to state a claim under the broader state law standard for disability under the NYSHRL. [1]

Under these circumstances, this Court should not shut its courthouse doors close to DeFranco and prevent him from pursuing his disability discrimination claim against NYPA, particularly in the context of a FRCP 12(b)(6) motion to dismiss.

### B.   The Plaintiff's Medical Episode Qualifies as a Disability under the ADA and NYSHRL

The Defendant next argues, again for the first time in its "renewed" motion to dismiss, that Mr. DeFranco's medical episode on January 10, 2020 does not qualify as a disability under the ADA or NYSHRL, and also that Mr. DeFranco failed to exhaust his administrative remedies with respect to such claim.  (Dkt. 22, pg. 8).

With respect to a being a qualifying disability under the ADA, the Defendant is wrong for at least two (2) reasons.  First, the statutory definition of "disability" includes being perceived or regarded as having such an impairment, which can be inferred from the allegations of the Complaint and proposed Amended Complaint regarding Plaintiff's January 10, 2022 medical episode.  *See e.g.*, *Laface v. Eastern Suffolk BOCES*, 349 F.Supp.3d 126, 147 (E.D.N.Y. 2018) (stating that a person is regarded as having an impairment if he or she establishes that he or she has been subjected to an action prohibited under the ADA because of an actual or perceived physical or mental impairment, whether or not the impairment limits or is perceived to limit a major life activity, and that the inquiry turns on the employer's perception of the employee and is therefore a question of intent, not whether the employee has a disability).  Second, it is well-settled that even brief, temporary disabilities are

---

[1] The Defendant's only citation in support of its erroneous argument is from the Kings County Supreme Court and discusses whether or not pregnancy impacted a plaintiff's daily living activities.  *Krause v. Lancer & Loader Group, LLC*, 40 Misc.3d 385 (Kings Cty. Sup. Ct. 2013).

actionable under the ADA.  *See e.g.*, *Hamilton v. Westchester Cty.*, 3 F.4th 86, 93 (2d Cir. 2021) (stating that a disability shorter than six months in duration can be actionable under the ADA) *citing* 28 C.F.R. §§ 35.108(d)(1)(ii); 35.108(d)(1)(ix); and 42 U.S.C. § 12012(4)(A).

With regards to the Defendant's claim that Mr. DeFranco failed to exhaust administrative remedies with respect to this medical episode, it is plain from the timeline of events set forth in the Complaint and proposed Amended Complaint that such exhaustion was not meaningful available to Mr. DeFranco, nor was it required under the circumstances.  At the time Mr. DeFranco experienced this medical episode, there were active investigations being conducted by the EEOC and NYS Division of Human Rights into the charges of discrimination filed by Mr. DeFranco on or about October 31, 2019.  Mr. DeFranco was out on FMLA leave for a period of time following the January 10, 2020 medical episode, and Defendant terminated him on February 19, 2020 shortly after he returned to work.  Mr. DeFranco did not have any meaningful opportunity to exhaust any administrative remedies, which is a well-established exception to the exhaustion requirements of the ADA and NYHRL.  *See e.g.*, *Williams v. Priatno*, 829 F.3d 118, 123-124 (2d Cir. 2016) (discussing the framework for analyzing whether an administrative remedy is actually "available"); *Hamilton*, 3 F.4th at 95.

It is also important to note that the discrimination that occurred following Mr. DeFranco's medical episode is reasonably related to the ongoing harassment and discrimination complained of in the EEOC and NYSDHR charges filed by him on October 31, 2019.  In particular, it provided the Defendant with a pretextual reason to terminate Mr. DeFranco's employment.  *See e.g.*, *Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67 (2d Cir. 2006) (explaining that there are three types of claims which may be considered reasonably related for purposes of satisfying the exhaustion requirement: (1) claims that fall within the agency's investigation which can reasonably be expected to grow out of the charge of discrimination; (2) claims that allege retaliation for filing an administrative charge;

and (3) claims that allege further incidents of discrimination carried out in the same manner alleged

in the administrative charge).

**C.    The Amended Complaint Sufficiently Alleges that the Adverse Employment
Action Taken Against Plaintiff was Because of his Age, Hearing Impairment,
and/or Perceived Disability**

The Defendant next argues that the proposed Amended Complaint fails to sufficiently plead

causation, or that any adverse employment action was taken because of Mr. DeFranco's age, hearing

impairment, and/or perceived disability.  The only way the Defendant can coherently do this is by

ignoring the allegations in the proposed Amended Complaint, ignoring the applicable standard on a

FRCP 12(b)(6) motion to dismiss, and drawing improper inferences in its favor.

For example, the Defendant ignores the actual allegations set forth in the Amended Complaint

and makes the improper inferences that Security Manager Sinatra was not aware of Mr. DeFranco's

hearing impairment, and that the disability and age-related conduct alleged only took place on

December 2017 and that his first adverse employment action was his December 2018 warning.  (Dkt.

No. 22, pg. 16).  The proposed Amended Complaint includes, but is not limited, the following

allegations that pertain to adverse employment action taken against DeFranco based on his disability,

age, and complaining of such discriminatory treatment:

➢ During his employment with Defendant NYPA, Plaintiff was harassed and subjected to
discriminatory terms and conditions of employment based on his age and hearing
disability, particularly by Defendant NYPA's Security Manager Sinatra and HR Manager
Smith.  (Dkt. No. 21-3, ¶ 20).

➢ After Plaintiff complained of this treatment, he was retaliated against by Manager Sinatra
in the course of his employment in various forms, including, but not limited to, degraded
terms and conditions of employment, negative performance reviews, inequitable and
disparate scheduling of shifts and vacation time, and preclusion from raises or overtime
pay.  (Dkt. No. 21-3, ¶ 21).

➢ On or about December 22, 2017, Plaintiff emailed HR Manager Smith expressing his
concerns over the discriminatory treatment he was receiving from Security Manager
Sinatra due to his age and hearing disability, and describing outlining the harassment and
hostile work environment that existed within Defendant NYPA's security department.
(Dkt. No. 21-3, ¶ 22).

11

➢ Security Manager Sinatra had openly chastised and mocked DeFranco in front of the other security sergeants with respect to his job performance and hearing impairment. (Dkt. No. 21-3, ¶ 23).

➢ Security Manager Sinatra had intentionally held *meetings* where Plaintiff would be unable to hear instruction and direction due to his hearing disability. (Dkt. No. 21-3, ¶ 23) (emphasis added).

➢ Security Manager Sinatra had taken away DeFranco's scheduling responsibilities and had implemented an unfair, inequitable schedule based on his age. (Dkt. No. 21-3, ¶ 23).

➢ Plaintiff was required to work 12-15 night shifts every 5 weeks, while similarly situated, younger security sergeants only worked 0-2 night shifts every 5 weeks. (Dkt. No. 21-3, ¶ 24).

➢ On or about May 7, 2018, Plaintiff contacted Defendant NYPA's confidential ethics hotline and reported the *escalating hostilities* towards Plaintiff from Security Manager Sinatra. (Dkt. No. 21-3, ¶ 26) (emphasis added).

➢ In July 2018, Plaintiff met with Regional Manager Francois to discuss the discriminatory treatment and hostility he was experiencing from Security Manager Sinatra and HR Manager Smith based on his age and hearing disability. (Dkt. No. 21-3, ¶ 29).

➢ In or about 2018, a new security sergeant started work with Defendant NYPA. Despite Plaintiff's seniority, the newly hired and younger security sergeant was offered and received an open line on the sergeants' schedule without Plaintiff being offered the opportunity, as was customary. (Dkt. No. 21-3, ¶ 30).

➢ On or about December 7, 2018, Plaintiff met with HR Manager Smith and Security Manager Sinatra and received a formal written warning regarding his employment with Defendant NYPA. (Dkt. 21-3, ¶ 31).

➢ On or about January 15, 2019, Plaintiff was issued another warning letter from Security Manager Sinatra and HR Manager Dawn McDonald further accusing him of insubordination and undermining Security Manager Sinatra's authority. (Dkt. 21-3, ¶ 33).

➢ On or about January 17, 2019, Plaintiff filed a formal internal complaint against Security Manager Sinatra and HR Manager Smith with Defendant NYPA's CRIO. (Dkt. 21-3, ¶ 34).

➢ Security Manager Sinatra issued Plaintiff a rating of "Does Not Meet Expectations" for the year 2018 as retaliation for Plaintiff filing a complaint with Defendant NYPA's CRIO in January 2019 wherein Plaintiff alleged retaliation and employment discrimination based on his age and hearing disability. (Dkt. 21-3, ¶ 38).

➢ On or about February 14, 2019, Plaintiff emailed Defendant NYPA's CRIO and requested that he be transferred to another department where he would not be subject to the ***continued harassment and hostility*** he was experiencing under Security Manager Sinatra. Plaintiff's request was ignored. (Dkt. 21-3, ¶ 40) (emphasis added).

➢ On October 17, 2019, Director Harvey issued a report concluding that Plaintiff's allegation of retaliation against Security Manager Sinatra was substantiated and recommended administrative action be taken to address the conduct that was found to be substantiated. (Dkt. 21-3, ¶ 41).

➢ On October 31, 2019, after receiving Director Harvey's findings, Plaintiff filed a pro se complaint with the NYSDHR and the EEOC alleging employment discrimination based on Plaintiff's age, hearing disability, marital status, and national origin. (Dkt. 21-3, ¶ 43).

➢ On or about January 10, 2020, Plaintiff had a medical episode where he blacked out and was found on the floor of the security department badging room in a semi-conscious state by Security Manager Sinatra. Despite Plaintiff advising Security Manager Sinatra that he was having medical issues and was scheduled to see a physician later that morning for work-related stress, Security Manager Sinatra subsequently accused Plaintiff of sleeping on the job. (Dkt. 21-3, ¶ 44).

➢ On or about February 19, 2020, Plaintiff was terminated from his employment for pretextual reasons, specifically that he had poor job performance and allegedly was sleeping on the job on January 10, 2020. (Dkt. 21-3, ¶ 45-46).

➢ Defendant NYPA continually harassed and subjected the Plaintiff to a hostile work environment ***because of his disability*** from the time he was hired on or about September 19, 2016 through the time he was terminated on February 19, 2020. This includes, but is not limited to, receiving a written warning regarding his employment on December 7, 2018; being subjected to a disciplinary meeting on January 2, 2019 during which the Defendant's agents played an illegally recorded audio recording of private conversations held between Plaintiff and other employees; being issued a warning letter on January 15, 2019; receiving a rating of "Does Not Meet Expectations" on February 6, 2019, precluding the Plaintiff from qualifying for a raise, additional benefits, and tuition assistance; from October 17, 2019 through February 19, 2020 when it failed to address the hostile work environment and substantiated discrimination finding from Director Harvey; and ultimately terminating the Plaintiff on February 19, 2020. (Dkt. No. 21-3, ¶¶ 58, 108) (emphasis added).

➢ Defendant NYPA continually harassed and subjected the Plaintiff to a hostile work environment ***because of his age***, from the time he was hired on or about September 19, 2016 through the time he was terminated on February 19, 2020. This includes, but is not limited to, receiving a written warning regarding his employment on December 7, 2018; being subjected to a disciplinary meeting on January 2, 2019 during which the Defendant's agents played an illegally recorded audio recording of private conversations held between Plaintiff and other employees; being issued a warning letter on January 15, 2019; receiving a rating of "Does Not Meet Expectations" on February 6, 2019, precluding the Plaintiff from qualifying for a raise, additional benefits, and tuition

assistance; from October 17, 2019 through February 19, 2020 when it failed to address the hostile work environment and substantiated discrimination finding from Director Harvey; and ultimately terminating the Plaintiff on February 19, 2020. (Dkt. No. 21-3, ¶¶ 74, 118).

Since this is the pleading stage in an employment discrimination case, there are many inferences that can be drawn from the above-referenced allegations, and all of those are to be resolved in favor of the Plaintiff in the context of a FRCP 12(b)(6) motion to dismiss. Even without any inferences, it is clear that the proposed Amended Complaint pleads ongoing discriminatory conduct that permeated the workplace and occurred on a regular basis. The facts alleged in the instant matter stand in stark contrast to the woefully deficient ones addressed by the District Court for the Eastern District of New York in *Laface v. Eastern Suffolk BOCES*, 349 F. Supp. 3d 126 (E.D.N.Y. 2018) ("While [plaintiff] mentions that he is over the age of 40 and that he was transferred to a different location with a change in his work hours, there is nothing in the pleading that allows the Court to infer that one was plausibly the cause of the other. The [p]laintiff does not allege that any other BOCES employees were ever treated differently than younger employees, that he was replaced by a younger employee, or that any of the [d]efendants ever mentioned the [p]laintiff's age in any relevant conversation.").

With respect to DeFranco's medical episode, it is improper to infer, in light of the allegations of the Amended Complaint, that Security Manager Sinatra actually believed DeFranco was sleeping on the job during his January 10, 2020 medical episode. The proposed Amended Complaint describes the long history of abuse and hostility DeFranco faced from Security Manager Sinatra, and it specifically alleges that Security Manager Sinatra used sleeping as a pretextual reason to have DeFranco terminated. It is also improper for the Defendant to try and draw the conclusion that the alleged discriminatory conduct only occurred in 2017 and that no adverse action took place until December 2018, particularly at this stage of the proceeding.

14

## II.   THE AMENDED COMPLAINT STATES A PLAUSIBLE AGE-RELATED CLAIM UNDER THE ADEA AND NYSHRL

Points B, C, and D of Defendant's Memorandum of Law in Opposition to Plaintiff's Motion to Leave to Amend hardly veil themselves as novel arguments, and are quite openly an attempt by the Defendant to restate its previously raised arguments (this time through a different attorney), presumably in an attempt to engage the Plaintiff in the war of attrition that is litigation.  Since most of these arguments have been thoroughly disposed of in Plaintiff's opposition to Defendant's initial motion to dismiss, as well as above, they will only be regurgitated herein as necessary to respond to the Defendant's second-bite of the apple.

Under both the ADEA and NYSHRL, it is unlawful for an employer to discharge any employee or otherwise discriminate against any individual with respect to their employment, compensation, terms, conditions, or privileges because of such individual's age.  29 U.S.C.S. § 623(a)(1); N.Y. Exec. Law § 296.  Under the ADEA, this protection covers individuals who are at least forty (40) years of age.  *Id.*  In order to state an ADEA or NYSHRL age discrimination claim, a plaintiff must allege that: (1) he or she was within the protected age group; (2) he or she was qualified for the position; (3) he or she experienced adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination.  *See e.g.*, *Green v. Town of E. Haven*, 952 F.3d 394, 2020 U.S. App. LEXIS 7342 (2nd Cir. 2020); *Matusick v. Erie County Water Authority*, 757 F.3d 31 (2d Cir. 2014).

On a motion to dismiss, a court need determine only whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise in the initial phase of litigation.  *Langella*, 2020 U.S. Dist. LEXIS 95588 at *17.  As such, to a defeat a motion to dismiss, an ADEA plaintiff must plausibly allege that they would not have suffered an adverse employment action but for their age.  *Id.*

In the proposed Amend Complaint (like the initial Complaint), the Plaintiff asserts factual allegations that, when accepted as true, sufficiently state a plausible claim of age discrimination in violation of the ADEA.  In particular, Mr. DeFranco avers in the Complaint that he was fifty-two (52) years old at the time he was hired by Defendant NYPA and fifty-six (56) years old at the time her was terminated from his employment.  (Dkt. 21-3, ¶ 7).  The Complaint also contains specific allegations as to the disparate and adverse employment actions the Plaintiff was subjected to because of his age, including younger, less senior security sergeants getting preferential scheduling treatment and terms and conditions of employment.  (Dkt. 21-3, ¶¶ 23-24, 30, 74).

When accepting the material factual allegations of the proposed Amended Complaint as true, as the Court must in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it is clear that the Plaintiff has pled sufficient facts to plausibly establish all four (4) elements of an employment discrimination claim on the basis of age under the ADEA.

## III.   THE AMENDED COMPLAINT STATES PLAUSIBLE CLAIMS FOR HOSTILE WORK ENVIRONMENT AND HARASSMENT BASED ON PLAINTIFF'S AGE, HEARING IMPAIRMENT, AND PERCEIVED DISABILITY

The standard for demonstrating a hostile work environment is the same under the ADEA and ADA. *Langella*, 2020 U.S. Dist. LEXIS 95588 at *34.  A hostile work environment claim requires a showing: (1) that the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment; and (2) that a specific basis exists for imputing the objectionable conduct to the employer.  *Id.*; *see also Alfano v. Costello*, 294 F.3d 365, 2002 U.S. App. LEXIS 12574 (2nd Cir. 2002).  As a general rule, incidents must be more than episodic – they must be sufficiently continuous and concerted in order to be deemed pervasive.   *Id.*   Courts will consider the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. *Id.*

In the present case, the Plaintiff's proposed Amended Complaint contains specific factual allegations of discriminatory conduct and harassment that occurred over the course of two and a half years.  As alleged in the Amended Complaint, the Plaintiff first raised concerns over his treatment in the workplace based on his hearing disability and age to Defendant NYPA's HR Manager on or about December 22, 2017 by sending an email outlining the hostility in the workplace permitted by Defendant NYPA.  (Dkt. No. 21-3, ¶¶ 21-22).  Defendant NYPA did not do anything to address these concerns, and the hostility and harassment towards Plaintiff increased afterwards.  (Dkt. No. 21-3, ¶¶ 25-26).  Approximately five (5) months later, on or about May 7, 2018, Plaintiff again complained of harassment and hostility in the work environment, but this time he contacted Defendant NYPA's confidential ethics hotline and reported the escalating hostilities between himself and Security Manager Sinatra.  (Dkt. No. 21-3, ¶ 26).

On or about June 5, 2018, almost one (1) month after contacting Defendant NYPA's confidential ethics hotline to report Security Manager Sinatra, Plaintiff expressed his concerns over the harassment and hostility in the work environment directly to Defendant NYPA's Regional Manager, and Plaintiff subsequently met with the Regional Manager in July 2018 to discuss his increasing concerns.  (Dkt. No. 21-3, ¶¶ 27, 29).  Defendant NYPA's Regional Manager brushed aside Plaintiff's concerns, but the hostility in the workplace and harassment directed at Plaintiff by Security Manager Sinatra escalated substantially thereafter, with the Plaintiff being issued pretextual written disciplinary warnings by Defendant NYPA via Security Manager Sinatra on December 7, 2018 and January 15, 2019.  (Dkt. No. 21-3, ¶¶ 29, 31, 33).

The discriminatory treatment towards Plaintiff reached such a fever-pitch that on January 17, 2019, Plaintiff filed a formal internal complaint with Defendant NYPA's CRIO against Security Manager Sinatra and HR Manager Smith.  (Dkt. No. 21-3, ¶ 34).  The Plaintiff also contacted and met with an investigator in the Niagara County District Attorney's Office regarding the alleged

eavesdropping and recording of conversations that occurred in Defendant NYPA's security lineup room.  (Dkt. No. 21-3, ¶ 35).  After Plaintiff filed the complaint with Defendant NYPA's CRIO, Security Manager Sinatra further escalated the hostilities and harassment towards Plaintiff at work, issuing Plaintiff a "Does Not Meet Expectations" rating during his annual performance review which was held on February 6, 2019, only a few weeks after Plaintiff had filed the internal complaint.  (Dkt. No. 21-3, ¶ 37-38).

On or about October 17, 2019, when Director Nancy Harvey issued a report that *substantiated* Plaintiff's claims of unlawful retaliation against him by Security Manager Sinatra and recommended administrative action be taken to remedy the situation.  (Dkt. No. 21-3, ¶ 41).  The Amended Complaint alleges that no administrative action was ever taken by Defendant NYPA in accordance with Director Harvey's recommendation.  (Dkt. No. 21-3, ¶ 42).  Moreover, on October 31, 2019, the Plaintiff filed a *pro se* complaint with the NYSDHR and EEOC alleging employment discrimination based on Plaintiff's age, hearing disability, marital status, and national origin, and also alleging retaliation in the form of a negative performance review received in February 2019 after filing the internal complaint with Defendant NYPA's CRIO.  (Dkt. No. 21-3, ¶ 43).  The Amended Complaint further alleges that Defendant NYPA terminated Plaintiff as retaliation for Plaintiff filing a complaint with the NYSDHR and EEOC against Security Manager Sinatra and HR Manager Smith.  (Dkt. No. 21-3, ¶ 48).

If we accept the material factual allegations regarding Plaintiff's harassment claims based on a hostile work environment and also afford the Plaintiff the benefit of every reasonable inference, it is beyond question that the circumstances alleged present plausible claims of discriminatory harassment under federal and state law in violation of the ADA, ADEA, and NYSHRL.

## IV.    THE AMENDED COMPLAINT STATES PLAUSIBLE RETALIATION CLAIMS UNDER THE ADA, ADEA, and NYSHRL

The elements for sustaining a claim for unlawful retaliation under state or federal law are the same, so the analytical framework reviewing courts must employ to analyze such claims is the same whether the plaintiff is attempting to sustain a claim under the ADA, ADEA, or NYSHRL. *Foster*, 724 F. Supp. 2d at 388-389 ("[c]laims for age or sex discrimination, or for retaliation, under the ADEA, Title VII, and the HRL, are all analyzed using the same basic framework").

Under the three-prong burden shifting approach laid out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff alleging claims under these statutes must first establish a prima facie case of unlawful discrimination or unlawful retaliation, which then shifts the burden to the employer to present evidence that the adverse employment decision or termination was for a legitimate, nondiscriminatory or nonretaliatory reason. *Id.* If the employer succeeds in presenting a legitimate, lawful reason for the termination, the plaintiff must then present evidence from which a factfinder would conclude that the proffered reason was pretextual and that the unlawful animus was the real reason for the termination. *Id.*

In order to make out a prima facie case for unlawful retaliation under state or federal law, a plaintiff must show that: (1) they have engaged in a protected activity; (2) the employer was aware of the activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protective activity and that adverse action. *Id.*, *see also Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 2013 WL 1776646 (2nd Cir. 2013).

An employee's complaint may qualify as protected activity, satisfying the first element of the test, so long as the employee has a good faith, reasonable belief that the underlying challenged actions of the employer violated the law. *Kelly*, 716 F.3d at 14. But not just any law – the employee must believe that the employment practice being opposed or complained of has been made unlawful by Title VII, NYSHRL, or another applicable statute regulating workplace practices. *Id.* The

reasonableness of the employee's belief is to be assessed in light of the totality of the circumstances. *Id.*

With respect to the element of a causal connection between the material adverse action and the protected activity engaged in by the employee, courts have determined that such element may be established either indirectly by showing that the protected activity was followed closely by retaliatory treatment or directly through evidence of retaliatory animus directed against a plaintiff by the defendant. *See e.g.*, *Jones v. Yonkers Pub. Schs*, 326 F.Supp.2d 536 (S.D.N.Y. 2004). With respect to the temporal connection nexus, the Second Circuit has specifically explained that it "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 2010 U.S. App. LEXIS 3424 (2nd Cir. 2010) (stating that the court had previously held that five months was not too long to find the causal relationship); *see also Pistello v. Bd. of Educ. of the Canastota Cent. Sch. Dist.*, 808 Fed. Appx. 19, 2020 U.S. App. LEXIS 11310 (2nd Cir. 2020) (holding that a reasonable factfinder could conclude that the defendant school district retaliated against the plaintiff six (6) months after plaintiff engaged in a protected activity).

As set forth above and in detail in the proposed Amended Complaint, the Plaintiff was terminated from his employment with Defendant NYPA on February 19, 2020, for the pretextual reason of poor job performance and sleeping on the job. (Dkt. No. 21-3, ¶ 44-48). In reality, however, Plaintiff was terminated because he engaged in an activity protected by the ADA, ADEA, and NYSHRL, namely filing a complaint with the NYSDHR and the EEOC against Defendant NYPA's security manager and HR manager. (Dkt. No. 21-3, ¶ 48).

Since the Court is reviewing the Complaint in the context of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it must accept as these factual allegations as true, and it must also give the Plaintiff the benefit of every reasonable inference. Assuming that just these facts alone are true, it is beyond

question that the Complaint states plausible claims for retaliation under the ADA, ADEA, and NYSHRL.

## V.   THE AMENDED COMPLAINT STATES A PLAUSIBLE RETALIATION CLAIM UNDER NY CIVIL SERVICE LAW § 75-b

As explained in Plaintiff's initial opposition papers (Dkt. No. 13), under NYSCSL § 75-b, a "public employer" is prohibited from dismissing or taking other disciplinary or adverse personnel action against a "public employee" regarding the employee's employment because the employee discloses to a governmental body information: (i) regarding a violation of a law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety; or (ii) which the employee reasonably believes to be true and reasonably believes constitutes an improper governmental action.  NYSCSL § 75-b(2).

In order for a plaintiff to prove their claim under NYSCSL § 75-b, they must show: (1) that they disclosed information to a governmental body regarding what they reasonably believe to be improper government action; (2) an adverse personnel action was taken against him; and (3) there is a causal connection between the disclosure and the adverse personnel action.  *Rusk v. New York State Thruway Auth.*, 37 F. Supp. 3d 578, 2014 U.S. Dist. LEXIS 109534 (W.D.N.Y. 2014).

In the context of a motion to dismiss, the Court must accept as true the Plaintiff's material factual allegations, which in this case specifically include the allegations that Plaintiff, a covered "public employee" working for a covered "public employer," was terminated as a result of his disclosure to Defendant NYPA's CRIO, the Niagara County District Attorney's Office, the NYSDHR, and EEOC, of information that the Plaintiff reasonably believed constituted improper governmental action.  (Dkt. No. 21-3, ¶¶ 9, 11, 12, 17, 136-145).  It is also significant to note that the reasonableness of Plaintiff's belief in the improper governmental action is highlighted and underscored by the findings of the report issued by Defendant on October 17, 2019, which found that

the Plaintiff's internal complaints of retaliation against the Security Manager were substantiated and directed that administrative action be taken to correct it.  (Dkt. No. 21-3, Ex. B).

As such, similar to many of the reasons set forth above, the proposed Amended Complaint – like the original Complaint – contains sufficient factual allegations to sustain a plausible claim for retaliatory termination under NYSCSL.

## VI.   THE AMENDED COMPLAINT STATES A PLAUSIBLE CLAIM OF RETALIATION UNDER THE FMLA

Similar to the anti-retaliation provisions contained in the ADA, ADEA, NYSHRL, and NYSCSL, the FMLA contains an anti-retaliation provision that prohibits employers from interfering with, restraining, or denying the exercise of an employee's rights under the FMLA.  29 U.S.C.S. § 2615(a)(1).  Moreover, it is unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful under the FMLA, such as requesting medical leave.  29 U.S.C.S. § 2615(a)(2).

As alleged in the proposed Amended Complaint, the Plaintiff experienced a medical episode on January 10, 2020 during his work shift where he blacked out and was found on the floor in a semi-conscious state.  (Dkt. No. 21-3, ¶ 44).  After consulting with a physician later that day, the Plaintiff submitted a request for leave under the FMLA.  (Dkt. No. 21-3, ¶ 45).  The proposed Amended Complaint specifically alleges that the Plaintiff was terminated from his employment because he submitted a request for medical leave under the FMLA, which when accepted as true, constitutes a violation of 29 U.S.C.S. § 2615(a)(2).  (Dkt. 21-3, ¶¶ 94-98).

## VII.  PLAINTIFF'S CLAIMS FOR DISCRIMINATION AND RETALIATION UNDER THE ADA AND ADEA ARE NOT TIME-BARRED

In its Memorandum of Law in Opposition to Plaintiff's motion for Leave to Amend (Dkt. No. 22), the Defendant argues that Plaintiff's claims for discrimination and retaliation under the ADA and ADEA should be dismissed to the extent that they rely on discrete acts of discrimination or retaliation

22

alleged to have occurred outside any applicable limitations period. (Dkt. No. 22, pg. 30). This suggestion would require the Court to bifurcate and dismiss from the Amended Complaint any allegations regarding conduct that occurred prior to January 4, 2019, which is 300 days before the date Mr. DeFranco filed his complaints with the EEOC and NYSDHR. (Dkt. No. 22, pg. 31). Defendant's position, however, conveniently glosses over the continuous and ongoing discriminatory conduct alleged in the Amended Complaint, which is intertwined inextricably from the conduct that began before January 4, 2019. In any event, the most adverse employment action suffered by the Plaintiff – his termination for filing complaints with the NYSDHR and EEOC alleging violations of his civil rights and requesting leave under the FMLA – occurred on February 19, 2020 and in retaliation for Mr. DeFranco filing the complaints with the NYSDHR and EEOC. (Dkt. No. 21-3, ¶ 48). Obviously this is outside of the time-bar suggested by the Defendant, so the utility of such a time-bar at this juncture seems extremely limited.

Further, although an aggrieved employee in New York State is typically required to file a complaint with the EEOC within 300 days of the alleged discriminatory conduct in order to subsequently file a claim in federal district court under the ADEA or ADA, the Supreme Court has held that bringing a timely administrative complaint is not a jurisdictional prerequisite to filing suit in a federal court and may be waived if equity requires. *Terry v. Ashcroft*, 335 F.3d 128, 2003 U.S. App. Lexis 14511 (2nd Cir. 2003), *citing Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S. Ct. 1127, 71 L. Ed. 2d 234 (1982). As such, filing a timely charge of discrimination with the EEOC is a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Id*.

Based on this Supreme Court precedent, the Second Circuit has specifically recognized three (3) situations in which claims not raised in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action, specifically: (1) where the conduct complained of would fall within the scope of

the EEOC investigation which can reasonably be expected to grow out of a properly exhausted prior EEOC complaint; (2) where the complaint is one alleging retaliation by an employer against an employee for filing a prior EEOC complaint; and (3) where the complaint alleges further incidents of discrimination carried out in precisely the same manner alleged in a properly exhausted prior EEOC complaint. *Terry*, 335 F.3d at 151.

Further, where claims are "reasonably related" to claims already asserted in a prior timely EEOC charge, the exhaustion requirement does not apply. *Anderson v. Dep't of Children & Families of Conn.*, 322 Fed. Appx. 15 (2nd Cir. 2009). The "reasonably related" doctrine applies when factual allegations made in the administrative complaint can be fairly read to encompass the claims ultimately pleaded in a civil action or to have placed the employer on notice that such claims might be raised. *Mathirampuzha v. Potter*, 548 F.3d 70, 75 (2nd Cir. 2008). Courts have interpreted the "reasonably related" doctrine as essentially an allowance of loose pleading given that the complaint's purpose of the initial complaint is to provide notice to the agency and allow for investigation. *Deravin v. Kerik*, 335 F.3d 195, 201 (2nd Cir. 2003).

In the case at bar, the Defendant's cannot seriously maintain at this stage of the litigation that the Plaintiff's first, second, third, and fourth causes of action are in any respect time-barred by virtue of the Amended Complaint containing factual allegations of discriminatory and retaliatory conduct that occurred prior to January 4, 2019, particularly when those acts are considered in the context of all the complained-of conduct that occurred subsequent to January 4, 2019. This includes a negative performance review, repeatedly ignoring Mr. DeFranco's complaints, a substantiated finding of retaliation from Defendant's CRIO, and ultimately Plaintiff's termination on February 19, 2020, while the NYSDHR and EEOC investigations were pending. (Dkt. No. 21-3, ¶¶ 33, 34, 35, 36, 37, 38, 42, 43, 46, and 48).

24

## **CONCLUSION**

For the reasons set forth herein, the Court should deny the Defendant's motion to dismiss the Plaintiff's proposed Amended Complaint in its entirety; and grant such other and further relief as it deems just and proper.

Dated: Buffalo, New York
       November 3, 2022

<strong>THE TARANTINO LAW FIRM, LLP</strong>

By:    */s/ Nicholas P. DeMarco*_____
        Nicholas P. DeMarco, Esq.
        Kevin P. Wicka, Esq.
        *Attorneys for the Plaintiff*
        610 Main Street, Suite 310
        Buffalo, New York 14202
        (716) 849-6500