UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RUSSELL DEFRANCO,

      Plaintiff,

    v.

NEW YORK POWER AUTHORITY,

      Defendant.

20-CV-1861-LJV
AMENDED DECISION &
ORDER[1]

---

On December 16, 2020, the plaintiff, Russell DeFranco, filed a complaint under

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12201; the Age Discrimination

in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq*.; the Family Medical Leave Act

---

    [1] This Court issued a decision and order on February 28, 2024.  Docket Item 28.
Among other things, this Court dismissed DeFranco's hostile work environment claims,
finding that they were untimely.  *See id.* at 10-11.

    Less than a month later, on March 21, 2024, the Second Circuit decided *King v.
Aramark Services Inc.*, in which it held that "[a] discrete discriminatory act, such as
termination, within the limitations period may not only support a claim for damages, it
may also render a hostile work environment claim timely *if it is shown to be part of the
course of discriminatory conduct that underlies the hostile work environment claim*."  96
F.4th 546, 561 (2d Cir. 2024).  At this Court's direction, both parties filed letter briefs
addressing the impact of *King*, if any, on this Court's prior decision.  Docket Items 31
and 32.

    This Court now issues this amended decision and order to incorporate *King* into
its analysis.  *See Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126, 134
(E.D.N.Y. 2021) ("A district court . . . possesses the inherent authority to *sua sponte*
reconsider its own interlocutory orders before they become final. . . . Whether such
revision is appropriate in any given case is within the sound discretion of the trial judge."
(citations omitted)), *aff'd*, 2023 WL 192671 (2d Cir. Jan. 17, 2023).  And in light of *King*,
this Court finds that DeFranco's hostile work environment claim based on his hearing
disability survives the defendant's motion to dismiss.  *See* Section IV, *infra*.

("FMLA"), 29 U.S.C. § 2615; the New York State Human Rights Law ("NYSHRL"), N.Y. Executive Law § 290 *et seq*.; and the New State Civil Service Law, N.Y. Civil Service Law § 75-b.[2]  Docket Item 1.  On February 26, 2021, the defendant, New York Power Authority ("NYPA"), moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Docket Item 6.  On April 16, 2021, DeFranco responded, Docket Item 13, arguing, among other things, that if the Court found the complaint to be insufficient, it should grant him leave to amend, *id.* at 26.[3]  On April 30, 2021, NYPA replied.  Docket Item 14. NYPA did not generally oppose DeFranco's request to amend, arguing only that his request should be denied as to claims that were time barred because such amendment would be futile.  *Id.* at 12-13.

After this Court issued an order denying without prejudice NYPA's motion to dismiss and ordering DeFranco to file a motion to amend that attached a proposed amended complaint as required by Local Rule 15(a), Docket Item 20, DeFranco moved to amend, attaching a proposed amended complaint as instructed, Docket Item 21. NYPA then responded to DeFranco's motion to amend and renewed its motion to dismiss, Docket Item 22; DeFranco responded to NYPA's motion and replied in support of his motion to amend, Docket Item 26; and NYPA replied in support of its renewed motion to dismiss, Docket Item 27.

For the reasons that follow, DeFranco's motion to amend, Docket Item 21, and NYPA's renewed motion to dismiss, Docket Item 22, both are granted in part and

---

[2] DeFranco also brought claims under Title VII of the Civil Rights Law, 42 U.S.C. § 1981 *et seq*., but he has since withdrawn those claims.  *See* Docket Item 13 at 6.

[3]  Page numbers for docket citations refer to ECF pagination.

denied in part.  More specifically, NYPA's motion to dismiss is granted with respect to the Third and Seventh Causes of Action, and the portions of the First and Sixth Causes of Action based on discrimination due to DeFranco's 2020 medical incident; DeFranco's motion to amend is denied with respect to those claims.  DeFranco's motion to amend is granted with respect to all other claims—including his discrimination and hostile work environment claims based on his hearing impairment (in the First and Sixth Causes of Action) and his retaliation claims (Second, Fourth, Fifth, Eighth, and Ninth Causes of Action)—and NYPA's motion to dismiss is denied with respect to those claims.

### FACTUAL BACKGROUND[4]

NYPA hired DeFranco as a security sergeant on September 19, 2016, and assigned him to its Niagara County facility located in Lewiston, New York.  Docket Item 21-3 at ¶ 17.  The security department at the Niagara County facility includes twenty unionized security guards who report to five security sergeants.  *Id.* at ¶ 18.  The security sergeants, who are non-union employees, report to the security manager, and the security manager reports to the regional manager.  *Id.* at ¶ 19.

DeFranco "has a documented hearing disability, and . . . NYPA was aware of this disability."  *Id.* at ¶ 8.  At some point in 2017, the security manager, Ryan Sinatra, conducted a meeting where DeFranco "was openly chastised and mocked by the other security sergeants with respect to his job performance and hearing impairment."  *Id.* at

---

[4] Unless otherwise noted, the following facts are taken from the proposed amended complaint, Docket Item 21-3.  On a motion to dismiss under Rule 12(b)(6), the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

¶ 23.  Additionally, Sinatra "intentionally held meetings where [DeFranco] would be unable to hear instruction and direction due to his hearing disability."  *Id.*

Sinatra also took "away [DeFranco's] scheduling responsibilities and . . . implemented an unfair, inequitable schedule based on his age."  *Id.*  More specifically, DeFranco "was working 12-15 night shifts every five (5) weeks, while similarly situated, younger security sergeants only worked 0-2 night shifts every five (5) weeks."  *Id.* at ¶ 24.

In December 2017, DeFranco emailed a human resources manager, Sean Smith, "expressing his concerns over the discriminatory treatment he was receiving from . . . Sinatra due to his age and hearing disability, and describing . . . the harassment and hostile work environment that existed within . . . NYPA's security department."  *Id.* at ¶ 22.  DeFranco later met with Smith and continued to raise concerns about Sinatra.  *Id.* at ¶ 23.  But NYPA did nothing.  *Id.* at ¶ 25.

About six months later, DeFranco contacted "NYPA's confidential ethics hotline and reported the escalating hostilities towards [him] from . . . Sinatra."  *Id.* at ¶ 26.  A month after that, DeFranco had to use sick time to deal with the stress and anxiety of the situation with Sinatra and Smith.  *Id.* at ¶ 28.

In July 2018, DeFranco spoke with NYPA's regional manager, Harry Francois, "regarding the hostility and discrimination by Security Manager Sinatra, and he was granted a formal meeting to discuss the situation."  *Id.* at ¶ 27.  But "Francois brushed aside [DeFranco's] concerns."  *Id.* at ¶ 29.

At some point in 2018, a new security sergeant was hired by NYPA.  *Id.* at ¶ 31. That new sergeant was given better scheduling opportunities than DeFranco despite DeFranco's seniority.  *Id.*

In December 2018, DeFranco received a formal written warning from Sinatra and Smith "for insubordination and unauthorized dealings with union stewards and union members."  *Id.*  During a meeting in connection with that warning, DeFranco learned that NYPA had listening devices placed throughout its Niagara County facility.  *Id.*

On January 2, 2019, DeFranco had a second disciplinary meeting with Smith and Sinatra, during which they "played a digital audio recording from . . . Smith's laptop of private conversations held between [DeFranco] and several security guards in the lineup room."  *Id.* at ¶ 32.  Two weeks later, DeFranco was issued another warning letter from Sinatra and Human Resources Manager Dawn McDonald "further accusing him of insubordination and undermining Security Manager Sinatra's authority."  *Id.* at ¶ 33. The claims in that letter were based on the same set of recordings that Smith and Sinatra had played during the January 2 meeting.  *Id.*

On January 17, 2019, DeFranco filed a formal internal complaint against Sinatra and Smith with NYPA's Civil Rights and Inclusion Office.  *Id.* at ¶ 34.  As part of the complaint process, DeFranco had a two-hour telephone interview with NYPA's Ethics Director, Nancy Harvey.  *Id.*  DeFranco "also met with an investigator in the Niagara County District Attorney's Office regarding the eavesdropping and recording of conversations that occurred in . . . NYPA's security lineup room."  *Id.* at ¶ 35.  The investigator told DeFranco "that he would be opening a criminal investigation into the matter."  *Id.*

On February 6, 2019, DeFranco and Sinatra met for DeFranco's 2018 job performance review.  *Id.* at ¶ 37.  Sinatra gave DeFranco "a rating of 'Does Not Meet Expectations,' which precluded [DeFranco] from qualifying for a raise and increased benefits, and made him ineligible for financial tuition assistance for his schooling."  *Id.* at ¶ 38.  DeFranco alleges that the rating of unsatisfactory was "retaliation for [his] filing a complaint with . . . NYPA's Civil Rights and Inclusion Office."  *Id.* at ¶ 39.

The next day, criminal investigators from the New York State Inspector General's Office and the Niagara County District Attorney's Office came to NYPA's Niagara County facility and interviewed Sinatra.  *Id.* at ¶ 40.  About a week later, DeFranco contacted NYPA's Civil Rights and Inclusion Office and asked to be transferred to another department.  *Id.* at ¶ 40. But that "request was ignored."  *Id.*

On October 17, 2019, Ethics Director Harvey issued her report and findings regarding her investigation into DeFranco's complaint.  *Id.* at ¶ 41.  Harvey concluded that DeFranco's allegation of retaliation against Sinatra was substantiated and recommended that administrative action be taken to address it.[5]  *Id.*  But NYPA failed to take the administrative action recommended by Harvey.  *Id.* at ¶ 42.

On October 31, 2019, DeFranco filed a *pro se* complaint with the New York State Department of Human Rights ("DHR") and the United States Equal Employment Opportunity Commission ("EEOC") alleging employment discrimination and retaliation. *Id.* at ¶ 43.

---

[5] Harvey also concluded that DeFranco's "allegations of disability and age discrimination . . . could not be substantiated."  Docket Item 21-3, Exhibit B.

On January 10, 2020, DeFranco "had a medical episode where he blacked out and was found on the floor of the security department badging room in a semi-conscious state by . . . Sinatra." *Id.* at ¶ 44. "Despite [DeFranco's] advising . . . Sinatra that he was having medical issues and was scheduled to see a physician later that morning for work-related stress, . . . Sinatra subsequently accused [DeFranco] of sleeping on the job." *Id.* Later that day, DeFranco submitted a leave request under the FMLA. *Id.* at ¶ 45.

On February 19, 2020, after DeFranco returned to work, he "was summoned to the security department boardroom for a meeting with" Smith and Francois. *Id.* at ¶ 46. During this meeting, NYPA informed DeFranco "that his employment . . . was terminated due to his alleged poor job performance and alleged sleeping on the job." *Id.* DeFranco alleges that his termination was in retaliation for his filing a complaint with DHR and the EEOC. *Id.* at ¶ 48.

## LEGAL PRINCIPLES

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell. Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## DISCUSSION

### I.   TIMELINESS

"A plaintiff seeking to assert an [employment] discrimination claim must first file an administrative charge with the EEOC or an equivalent agency within three hundred days after the alleged unlawful employment practice."  *Zabar v. N.Y.C. Dep't of Educ.*, 2020 WL 2423450, at *4 (S.D.N.Y. May 12, 2020) (citation and internal quotation marks omitted).  "Failure to do so renders the claim time[ ]barred."  *Id.* (citation omitted); *see generally Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("As for the permissible temporal scope of a federal claim of employment discrimination, generally if the plaintiff has initially filed an administrative claim in a state whose laws prohibit such discrimination, the limitations period for filing an action is 300 days after the alleged unlawful practice.").

The Supreme Court has distinguished between two different types of "unlawful employment practice[s]": "discrete discriminatory acts and hostile work environment claims."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002).  "Discrete acts of discrimination include 'termination, failure to promote, denial of transfer, or refusal to hire,' as well as disciplinary actions such as suspensions and the denial of training."  *Ellis v. Delphi Corp.*, 2009 WL 3671371, at *3 (W.D.N.Y. Oct. 29, 2009) (citing *Morgan*, 536 U.S. at 114).  The statute of limitations is "strictly enforced" for such claims and applies "to each discrete act of alleged discrimination."  *Id.* at *2-3.  In other words, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the . . . 300-day time period after the discrete discriminatory act occurred."  *Morgan*, 536 U.S. at 113.

The statute of limitations operates differently, however, for claims based on a hostile work environment.  *See id.* at 115-17.  "A charge alleging a hostile work environment claim . . . will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the [limitations] time period."  *Id.* at 122.

Here, NYPA argues that DeFranco's claims "should be dismissed to the extent they rely on discrete acts of discrimination or retaliation alleged to have occurred outside . . . the applicable limitations[] periods."  Docket Item 22 at 30.  In particular, NYPA argues that the alleged "formal written warning" DeFranco received on December 6, 2018, and the alleged "second disciplinary meeting" on January 2, 2019, are discrete acts.  *Id.* at 31.  In response, DeFranco asserts that the complaint alleges "continuous and ongoing discriminatory conduct" that "is intertwined inextricably [with] the conduct that began before January 4, 2019."  Docket Item 28.

"While it is clear that a timely hostile environment claim cannot make an untimely discrete act actionable, . . . the converse is [not] true."  *King v. Aramark Servs. Inc.*, 96 F.4th 546, 560 (2d Cir. 2024).  In other words, "[a] discrete discriminatory act, such as termination, within the limitations period may . . . render a hostile work environment claim timely *if it is shown to be part of the course of discriminatory conduct that underlies the hostile work environment claim*."  *Id.* at 561.

This Court agrees with NYPA that the disciplinary actions alleged by DeFranco are discrete acts, each of which must be timely to be actionable on their own.  *See Daniels v. Niagara Mohawk Power Corp.*, 2007 WL 925759, at *4 (W.D.N.Y. Mar. 26, 2007) (explaining that "discriminatory transfer, suspension, discipline, promotion,

9

compensation and the like . . . are discrete acts of discrimination as opposed to a continuing violation and are actionable only to the extent that each occurred within the 300-day time period").  As explained below, however, those events also can be actionable as part of a hostile work environment.

As a result, this Court finds that only the adverse actions alleged to have occurred after January 4, 2019, are actionable as discrete acts of discrimination.  More specifically, the following allegations are timely: (1) the issuance of a warning letter on January 15, 2019; (2) the rating of "Does Not Meet Expectations" on February 6, 2019; (3) the failure to discipline Sinatra after Harvey's report; (4) the denial of DeFranco's transfer request on February 14, 2019; and (5) the termination of DeFranco's employment on February 19, 2020.  Docket Item 23-1 at ¶¶ 33-46, 58, 108.  All of the actions, however, may be considered as part of the hostile work environment claim, which the Court analyzes below.  *See* Section IV, *infra.*

## II.   AGE DISCRIMINATION CLAIMS

Under the ADEA, it is "unlawful" for employers to "fail or refuse to hire," "discharge," or "otherwise discriminate against" an employee or potential employee "because of [that] individual's age."[6]  29 U.S.C. § 623(a)(1); *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 120 (1985) ("Section 4(a)(1) of the [ADEA] proscribes differential treatment of older workers with respect to a privilege of employment." (alterations, citation, and internal quotation marks omitted)).  "To survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under

---

[6] The ADEA applies only to "individuals who are at least 40 years of age."  29 U.S.C. § 631(a).

the ADEA must plausibly allege that adverse action was taken against [him] by [his] employer, and that [his] age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 31-32 (2d Cir. 2016) (summary order) (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).  Claims of age discrimination under the NYSHRL "are analyzed under the same framework as age discrimination claims brought pursuant to the ADEA."  *Braun v. Adm'rs for the Pros., Inc.*, 2018 WL 3597504, at *7 (E.D.N.Y. July 26, 2018).

DeFranco claims that he was discriminated against "because of his age, from the time he was hired on or about September 19, 2016[,] through the time he was terminated on February 19, 2020."  Docket Item 21-3 at ¶ 74.  More specifically, the timely-alleged adverse actions included:

> being issued a warning letter on January 15, 2019; receiving a rating of "Does Not Meet Expectations" on February 6, 2019, precluding [him] from qualifying for a raise, additional benefits, and tuition assistance; from October 17, 2019[,] through February 19, 2020[, the defendant's failing] to address the hostile work environment and substantiated discrimination finding from Director Harvey; and ultimately terminating [DeFranco] on February 19, 2020.

*Id.* at ¶¶ 74, 118.

As NYPA observes, however, the proposed amended complaint is devoid of any causal link between those alleged adverse actions and DeFranco's age.  *See* Docket Item 22 at 18.  And while DeFranco alleges that similarly situated younger workers were given better schedules, *see* Docket Item 21-3 at ¶ 24, an unfavorable schedule is not an adverse action that can form the basis of a viable discrimination claim.  *See Williams v. Ford Motor Co.*, 2014 WL 1572302, at *13 (W.D.N.Y. Apr. 18, 2014) ("Where assignments fall within the duties of a plaintiff's position, receiving unfavorable

schedules or work assignments does not, without more, rise to the level of an adverse employment action.").

Because the proposed amended complaint does not allege any plausible causal link—let alone a but-for causal link—based on DeFranco's age, DeFranco's age discrimination claims under the ADEA and the NYSHRL (Third and Seventh Causes of Action) are dismissed, and his motion to amend his complaint with respect to those claims is denied as futile.

### III.   DISABILITY DISCRIMINATION CLAIMS

The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of [an] individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment."  42 U.S.C. § 12102(1).  The statute provides the following non-exhaustive list of major life activities: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  *Id.* § 12102(2)(A).  "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability."  *Id.* § 12102(4)(C).

To establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate:

> (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or

without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability.

*Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008).  But plaintiffs "are not required to establish a *prima face* case at the motion to dismiss stage."  *Zako v. Encompass Digital Media, Inc.*, 2020 WL 3542323, at *7 (D. Conn. June 30, 2020) (citing *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order)).  Rather, "a plaintiff need only give plausible support to a minimal inference of discriminatory motivation" to survive a motion to dismiss.  *Dooley*, 636 F. App'x at 20. That being said, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed."  *Id.* (quoting *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014)).

According to DeFranco, NYPA gave him negative performance reviews and fired him because "he has a hearing impairment" and because "he had a medical episode where he lost consciousness while working on January 10, 2020."  *Id.* at ¶¶ 51, 104. The Court will address of those claims each in turn.

### A.  Hearing Impairment

With respect to DeFranco's hearing impairment, NYPA argues that DeFranco has not sufficiently pled that he has a disability under the ADA.  NYPA acknowledges that "hearing is a major life activity (*see* 42 U.S.C. § 12102(2)(A))," but it contends that DeFranco "has failed to allege that such major life activity is 'substantially limited.'" Docket Item 22 at 13.

In support of its argument, NYPA cites *O'Connor v. New York State Department of Financial Services*, 2022 WL 3998099 (N.D.N.Y. Sept. 1, 2022), where the court

found a plaintiff's allegations that her hearing impairment caused "her difficulty hearing in certain situations" and affected "certain forms of communications" to be "vague and equivocal allegations [that] reveal[ed] nothing about [the p]laintiff's hearing loss."  *Id.* at *3.  The same is largely true here:  DeFranco gives very little detail about the nature or extent of his hearing loss.  But DeFranco also pleads that Sinatra "intentionally held meetings where [DeFranco] would be unable to hear instruction and direction due to his hearing disability."  Docket Item 21-3 at ¶ 23.  That allegation plausibly suggests that DeFranco's hearing impairment was substantially limiting.

The next question is whether DeFranco has "give[n] plausible support to a minimal inference of discriminatory motivation."  *See Dooley*, 636 F. App'x at 20.  And the answer is that he has.

As noted above, DeFranco alleges that at some point in 2017, "Sinatra conducted a meeting where [DeFranco] was openly chastised and mocked by the other security sergeants with respect to his job performance and hearing impairment."  Docket Item 23-1 at ¶ 23.  DeFranco also claims that during that time period, "Sinatra . . . intentionally held meetings where [DeFranco] would be unable to hear instruction and direction due to his hearing disability."  *Id.*  Although these incidents are not timely, *see supra* Section I, "expiration of the limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'"  *Davis-Garett v. Urb. Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) (quoting *Morgan,* 536 U.S. at 113).

As to the alleged mocking, "verbal comments may raise an inference of discrimination, but not where they lack a 'causal nexus to the [discriminatory] decision.'"

*Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) (quoting *Williams v. Victoria's Secret*, 2017 WL 1162908, at *8 (S.D.N.Y. Mar. 28, 2017)).  "To determine whether a particular comment is probative of discriminatory animus or is a mere 'stray remark,' a court considers: "(1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark . . . ; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decision[-]making process."  *Id.* (quoting *Schreiber v. Worldco, LLC*, 324 F.Supp.2d 512, 519 (S.D.N.Y. 2004)).  Here, those factors cut in favor of finding a plausible inference of discriminatory animus.

First, although the remarks were made by "the other security sergeants"—coworkers, not supervisors or decisionmakers—they were made "openly" at a meeting that "Sinatra conducted."  Docket Item 23-1 at ¶ 23.  So Sinatra—a decisionmaker and supervisor—at the very least permitted the remarks.

Second, while the meeting was several years removed from the adverse actions, other allegations suggest that the conduct continued.  For example, DeFranco alleges that in May 2018, he "contacted . . . NYPA's confidential ethics hotline and reported the *escalating hostilities* towards [him] from . . . Sinatra."  Docket Item 21-3 at ¶ 26 (emphasis added).  Likewise, DeFranco alleges that "[i]n July 2018, [he] met with Regional Manager Francois to discuss the discriminatory treatment and hostility he was experiencing from . . . Sinatra."  *Id.*

Third, the comments mocked DeFranco specifically for his hearing impairment. Fourth, although the comments were not made in the context of the decision-making

process, that factor alone does not outweigh the other factors. And what is more, the remarks were not made in a vacuum: DeFranco alleges that Sinatra held "meetings where [DeFranco] would be unable to hear instruction and direction due to his hearing disability." *Id.* at ¶ 23.

In light of all that, this Court finds that the allegations that Sinatra held meetings where DeFranco was openly mocked and unable to hear instruction, followed by "escalating hostilities" and then a series of adverse actions, "nudge [DeFranco's] claims across the line from conceivable to plausible." *Dooley*, 636 F. App'x at 20. DeFranco's discrimination claim based on his hearing disability therefore survives NYPA's motion to dismiss.

### B.  January 2020 Medical Episode

DeFranco also cites his blacking out in January 2020 as a disability giving rise to his ADA claim. But that single episode—without more—does not constitute a disability under the ADA.

"[A] plaintiff [must] do more than simply allude to [his] impairments in [his] pleadings; [he] must plead *how* those impairments significantly impacted major life activities, or [he] will not survive a motion to dismiss." *Collins v. Giving Back Fund*, 2019 WL 3564578, at *13 (S.D.N.Y. Aug. 6, 2019) (emphasis in original); *see also Giallanza v. Time Warner Cable*, 2009 WL 857502, at *7 (W.D.N.Y. Mar. 30, 2009) ("[I]t is well settled under federal law that the ADA requires more than a diagnosis of a condition for a person to be considered disabled as that term is defined under the Act."). Indeed, even when it "may be obvious that [a plaintiff's] impairments affect her major life activities, she [still] must plead that those activities have been substantially impaired in

16

order for her to be considered disabled." *Delgado v. Triborough Bridge and Tunnel Auth.*, 485 F. Supp. 2d 453, 459 (S.D.N.Y. 2007).  DeFranco has not done that here.

More specifically, DeFranco has failed to plead how the "medical episode where he blacked out" substantially limited his ability to perform any major life activities. Indeed, he has not even hinted at how this alleged disability affected him other than on that day.  He says only that "he was having medical issues and was scheduled to see a physician later that morning for work-related stress" and that "[f]ollowing this medical episode, on or about January 10, 2019, [he] submitted a request for leave under the FMLA."  Docket Item 21-3 at ¶¶ 44-45.  Those facts are insufficient to plead a disability within the meaning of the ADA.[7]  *See Giallanza*, 2009 WL 857502, at *7; *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 151 (E.D.N.Y. 2015) ("Without any factual specificity as to the alleged disability claimed and the major life activities affected, the [c]omplaint fails to plead that plaintiff was disabled.").

Perhaps recognizing that he had not established that his medical incident qualified as a disability under the ADA, DeFranco shifts gears in his reply and suggests that he instead was "perceived or regarded as having such an impairment."[8]  Docket Item 26 at 14.  He claims this "can be inferred from the allegations of the [c]omplaint and proposed [a]mended [c]omplaint regarding [his] January 10, 2022[,] medical

---

[7] As this Court previously has observed, "[b]ecause a worker may apply for FMLA leave for reasons unrelated to her own health, *see* 29 C.F.R. § 825.101(a), a request for FMLA leave alone cannot establish a disability."  *Lewis v. Kaleida Health*, 2021 WL 2592341, at *6 (W.D.N.Y. June 24, 2021).

[8] DeFranco mentioned only his hearing impairment in response to NYPA's initial motion to dismiss and did not claim that this medical incident qualified as a disability. *See* Docket Item 13 at 20-22.

episode." *Id.*  Again, this Court disagrees.  An employee's one-time medical incident at work, statement that he was seeing a doctor for "medical issues and work-related stress," and request for FMLA leave is insufficient to create a plausible inference that an employer regarded the employee as disabled.

For all those reasons, this Court finds that DeFranco has failed to plead that his one-time medical incident qualifies as a disability under the ADA.[9]

* * *

Accordingly, this Court grants in part and denies in part DeFranco's motion to amend with respect to his disability discrimination claims under the ADA and the NYSHRL (First and Sixth Causes of Action) and grants in part and denies in part NYPA's motion to dismiss with respect to those claims.  More specifically, DeFranco's disability discrimination claim based on his hearing impairment may proceed, but his claim based on his January 2020 "medical episode" is dismissed.

## IV.   HOSTILE WORK ENVIRONMENT

DeFranco alleges that NYPA "subjected [him] to a hostile work environment because of his disability" and "because of his age."  Docket Item 23-1 at ¶¶ 58, 74, 108, 118.  Among other things, DeFranco alleges that at some point in 2017, "Sinatra conducted a meeting where [DeFranco] was openly chastised and mocked by the other security sergeants with respect to his job performance and hearing impairment."  Docket Item 23-1 at ¶ 23.  DeFranco also claims that during that time period, "Sinatra . . .

---

[9] Thus, the Court need not address NYPA's argument that DeFranco failed to exhaust his administrative remedies with respect to these allegations.  *See* Docket Item 22 at 14-15.

intentionally held meetings where [DeFranco] would be unable to hear instruction and direction due to his hearing disability." *Id.* DeFranco says that in May 2018, he "reported . . . escalating hostilities towards [him] from . . . Sinatra." *Id.* at ¶ 26.

The alleged hostile work environment also

> include[d] . . . receiving a written warning regarding [DeFranco's] employment on December 7, 2018; being subjected to a disciplinary meeting on January 2, 2019[,] during which the [d]efendant's agents played an illegally recorded audio recording of private conversations held between [DeFranco] and other employees; being issued a warning letter on January 15, 2019; receiving a rating of "Does Not Meet Expectations" on February 6, 2019, precluding [DeFranco] from qualifying for a raise, additional benefits, and tuition assistance; from October 17, 2019 through February 19, 2020[, the defendant's failing] to address the hostile work environment and substantiated discrimination finding from Director Harvey; and ultimately terminating [DeFranco] on February 19, 2020.

*Id.* at ¶¶ 58, 74, 108, 118.

### A. Disability

This Court finds that the allegations that "Sinatra conducted a meeting where [DeFranco] was openly chastised and mocked by the other security sergeants with respect to his job performance and hearing impairment" and that "Sinatra had intentionally held meetings where [DeFranco] would be unable to hear instruction and direction due to his hearing disability" support a hostile work environment claim. Docket Item 23-1 at ¶ 23. And although those allegations took place outside the statute of limitations period, DeFranco has alleged "escalating hostilities" followed by a series of timely adverse disciplinary actions.

Taking all those allegations as true—as the Court must at this stage—DeFranco has plausibly alleged a hostile work environment based on his hearing impairment. More specifically, it is plausible that DeFranco was mocked and ostracized based on his

hearing disability and then subjected to a series of adverse disciplinary actions that were "part of the course of discriminatory treatment that comprise[d] the hostile environment." *See King*, 96 F.4th at 560.

### B.  Age

DeFranco's claim that he was subjected to a hostile work environment based on his age is a different story, however.  DeFranco has alleged no facts that plausibly connect the alleged hostile work environment to his age.  *See* Section II, *supra*.  As such, that claim is dismissed.

\* \* \*

For those reasons, DeFranco's claim of a hostile work environment based on age (included as part of the Third and Seventh Causes of Action) is dismissed, but his claim of a hostile work environment based on disability (included as part of the First and Sixth Causes of Action) may proceed.[10]

## V.    RETALIATION CLAIMS

### A.  ADA, ADEA, and NYSHRL

To state a prima facie case of retaliation under the ADA or ADEA, a plaintiff must demonstrate "that (1) the employee was engaged in an activity protected by the ADA [or ADEA], (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the

---

[10] DeFranco did not plead separate causes of action for his hostile work environment claims; he included them in his discrimination claims.

protected activity and the adverse employment action."[11]  *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999) (ADA); *see Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (ADEA).  The "plaintiff need not establish that the conduct he opposed was actually a violation of the statute so long as he can establish that he possessed a 'good faith, reasonable belief that the underlying challenged actions of the employer violated th[at] law.'"  *Sarno*, 183 F.3d at 159 (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)).

"As for causation, a plaintiff must plausibly plead a connection between the act and his engagement in protected activity."  *Vega*, 801 F.3d at 90 (citing 42 U.S.C. § 2000e–3(a)).  "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action."  *Id.; see also Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 217 (2d Cir. 2001) ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.").

Here, DeFranco alleges that his negative performance reviews and termination were retaliatory.  Docket Item 21-3 at ¶¶ 37-38, 48.  More specifically, he says that "[o]n or about February 6, 2019, only a few weeks after [DeFranco] filed his complaint with . . . NYPA's Civil Rights and Inclusion Office[,] . . . Sinatra issued [DeFranco] a rating of 'Does Not Meet Expectations,' which precluded [DeFranco] from qualifying for a raise and increased benefits, and made him ineligible for financial tuition assistance for his

---

[11] NYSHRL retaliation claims are analyzed under the same framework.  *See Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 176 (E.D.N.Y. 2017).

schooling." *Id.* at ¶ 37.  DeFranco also says that his employment was terminated less than four months after an internal investigation found Sinatra's actions to be retaliatory and DeFranco filed a complaint with DHR and the EEOC.  *Id.* at ¶ 46.

That temporal proximity—especially coupled with the internal report substantiating DeFranco's complaint of retaliation—is sufficient to allege a retaliatory motive at least at the pleading stage.  First, only three weeks passed between DeFranco's report to NYPA's Civil Rights and Inclusion Office and his "Does Not Meet Expectations" rating—a time frame that certainly is sufficient to support a plausible inference of retaliation.  *See Vega*, 801 F.3d at 92 (finding that complaint plausibly alleged retaliation claim when plaintiff received negative performance evaluation two months after engaging in protected activity).  And while the time between DeFranco's DHR and EEOC complaints and his termination was a bit longer—about four months— that still is within the range that the Second Circuit has found can create a plausible inference of retaliation.  *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("Though this Court has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship." (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.,* 252 F.3d 545, 555 (2d Cir. 2001))).

DeFranco's motion to amend therefore is granted with respect to his retaliation claims under the ADA, ADEA, and NYSHRL (Second, Fourth, and Eighth Causes of Action), and NYPA's motion to dismiss is denied with respect to those claims.

### B. Section 75-B

To state a claim under New York Civil Service Law section 75-b, a plaintiff must allege:

> (1) an adverse personnel action; (2) disclosure of information to a governmental body (a) regarding a violation of a law, rule, or regulation that endangers public health or safety, or (b) which [he] reasonably believes constitutes an improper governmental action; and (3) a causal connection between the disclosure and the adverse personnel action.

*Rusk v. New York State Thruway Auth.*, 37 F. Supp. 3d 578, 600 (W.D.N.Y. 2014). More specifically, section 75-b "requires a plaintiff to demonstrate that he disclosed information that he 'reasonably believes to be true and reasonably believes constitutes an improper governmental action'" and that his employer took adverse action against him as a result of that disclosure. *Id.*

DeFranco argues that NYPA's alleged retaliation against him for complaining about discrimination constitutes "improper government action" sufficient to state a claim under section 75-b. Docket Item 26 at 26-27. This Court agrees.

First, this Court already has determined that DeFranco has sufficiently pleaded adverse actions and causal nexus. Therefore, "[t]he only remaining question is whether [DeFranco] pleads 'disclosure of information to a governmental body [regarding an improper governmental action].'" *Balchan v. City Sch. Dist. of New Rochelle*, 2023 WL 4684653, at *8 (S.D.N.Y. July 21, 2023) (quoting *Krzesaj v. N.Y.C. Dep't of Educ.*, 2017 WL 1031278, at *11 (S.D.N.Y. Mar. 15, 2017)). Under section 75-b, "'[i]mproper governmental action' is conduct 'which is in violation of any federal, state or local law, rule or regulation.'" *Id.* (quoting N.Y. Civ. Serv. Law § 75–b(2)(a)).

DeFranco alleges that he reported what he thought was discrimination in violation of state and federal antidiscrimination laws to the NYPA, and the NYPA's

internal investigation substantiated his retaliation allegations.  Those allegations are

sufficient to survive a motion to dismiss.  *See id.* (denying motion to dismiss section 75-

b claim where the "[p]laintiff alleges that she reported violations of state and federal

law").

DeFranco's motion to amend therefore is granted with respect to his Ninth Cause

of Action under section 75-b, and NYPA's motion to dismiss is denied with respect to

that claim.

### C.  FMLA

The FMLA "entitle[s] employees to take reasonable leave for medical reasons,

for the birth or adoption of a child, and for the care of a child, spouse, or parent who has

a serious health condition."  29 U.S.C. § 2601(b)(2).  To protect these rights, "the FMLA

makes it illegal for employers to: (1) 'interfere with, restrain, or deny the exercise of or

the attempt to exercise, any right' provided under the FMLA; or (2) 'discharge or in any

other manner discriminate against any individual for opposing any practice made

unlawful' by the FMLA."  *Balchan*, 2023 WL 4684653, at *8 (quoting *Prout v. Vladeck*,

316 F. Supp. 3d 784, 800 (S.D.N.Y. 2018)).

To establish an FMLA retaliation claim, a plaintiff must "demonstrate [that]: (1)

[he] exercised rights protected under the FMLA; (2) [he] was qualified for his position;

(3) [he] suffered an adverse employment action; and (4) the adverse employment action

occurred under circumstances giving rise to an inference of retaliatory intent."  *Id.*

(quoting *Kastrati v. Progress of Peoples Mgmt. Corp.*, 2020 WL 6940991, at *5

(E.D.N.Y. Nov. 24, 2020)).

DeFranco alleges that "[a]t all times relevant, [he] was a qualified employee under the FMLA, and [NYPA] was a qualified employer under the FMLA."  Docket Item 21-3 at ¶ 94.  "After experiencing a medical episode while at work on January 10, 2020," DeFranco says, he "requested leave under the FMLA, which he was entitled to do."  *Id.* at ¶ 95.  Then, on February 19, 2020—"shortly after [DeFranco] had returned to work"— he was terminated.  *Id.* at ¶ 96.  Given the temporal proximity of about a month, those allegations are sufficient to state a plausible claim that DeFranco was fired in retaliation for exercising his rights under the FMLA.

DeFranco's motion to amend therefore is granted with respect to his Fifth Cause of Action alleging retaliation under the FMLA, and NYPA's motion to dismiss is denied with respect to that claim.

## CONCLUSION

For the reasons stated above, this Court GRANTS IN PART and DENIES IN PART DeFranco's motion to amend, Docket Item 21, and GRANTS IN PART and DENIES IN PART NYPA's renewed motion to dismiss, Docket Item 22.  More specifically, NYPA's motion to dismiss is GRANTED with respect to the Third and Seventh Causes of Action, and the portions of the First and Sixth Causes of Action based on discrimination due to DeFranco's 2020 medical incident; DeFranco's motion to amend is DENIED with respect to those claims.  DeFranco's motion to amend is GRANTED with respect to all other claims—including his hostile work environment and discrimination claims based on his hearing impairment (in the First and Sixth Causes of Action) and his retaliation claims (Second, Fourth, Fifth, Eighth, and Ninth Causes of Action)—and NYPA's motion to dismiss is DENIED with respect to those claims.

DeFranco shall file a second amended complaint consistent with this decision and order on or before **April 29, 2024**.  NYPA shall answer the second amended complaint consistent with Federal Rule of Civil Procedure 12(a).

Dated:   April 15, 2024
        Buffalo, New York


 */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE